Gkeen, J.
delivered the opinion of the court.
This is a presentment by the grand jury of Davidson county, against the plaintiff in error, for gaming at cards for the sum of six dollars. The defendant appeared in court and confessed the charge, and submitted to the mercy of the court. . He was fined five dollars, and ordered to find sureties in the sum of one hundred *497 dollars, that “he would not be guilty of gaming for twelve months,” and to remain in custody until the fine and costs were paid or secured, and until the recognizance, not to game as aforesaid, should be entered in to.
From this judgment the defendant appealed to this court.
It is now insisted for the defendant, that the court had no power to require a recognizance with sureties, conditioned, that he ■would not game for twelve months.
The statute of 34 Edward 3, ch. 1, if in force in this State, which it is not necessary now to decide, does not apply to the case of a judgment of conviction for a misdemeanor, in a court of record. That statute empowered justices of the peace,' to restrain “offenders, rioters andall other barrators,” and those that havebe'en “pillers and robbers” beyond sea, and will not “labor,” and all “them that be not of good fame;" and to require of them “sufficient surety and mainprize of their good behaviour.” Under this act, the words “not of good fame,” were construed in England, to be of such latitude as to leave in a great measure, to the judgment of the.magistrate, the character of person that would authorize him to require sureties for the good behaviour. 1 Hawk.Pl.Cr.486, sec. 4. But in this country, many of the cases which the English books lay down, as proper for taking sureties for good behaviour, can have no application. Such are cases relating to offences against religion, as existing in the established church. Every man in this country has a right to worship God according to the dictates of his own conscience; and if he choose to refrain from attendance at church altogether, he is answerable only to his conscience and his God. So, accusing a justice of ignorance in the discharge of his office, would not justify binding the party to his good behaviour in this country. For although it would be unmannerly, yet our free institutions allow a much greater license of language towards public functionaries, than is thought consistent with good order in England.
But this act of Edward 3, is perhaps superseded by our act of 1801, ch.-22.
That act authorises the justice of the peace to issue a warrant, and cause to be brought before him, and to bind to his good behaviour, “any person who has no apparent means of. subsistence, and neglects applying himself to some honest calling, and is found sauntering about, neglecting his business, and endeavoring to maintain himself by gaming, or other undue means.” These words, “oilier *498 undue means” in. our act,are of great latitude, and probably embrace all the cases, that, under our institutions, ought to be brought ■within the operation of this discretionary power of the magistrate. But these statutes, however important their provisions in regard to the jurisdiction of magistrates in the administration of 'preventive justice, do not apply to cases of conviction for a misdemeanor in a court of record. Binding to the good behaviour was a discretionary judgment, at the common law, after a conviction for a gross misdemeanor, before the passage of the statute of 34 Edward 3.
In Burns’ justice, (vol. 4, p. 268,) it is said, “binding to the good behaviour, was a discretionary judgment, at the common law, given by a court of record, for an offence at the suit of the King, after a common law conviction by a verdict of twelve men.” There is a great difference, he says, between what a court of record may do after a conviction, and what a single justice, out of sessions, may do.
So in 4 Blackstone’s Commentaries, 352, it is laid down, that the requisition of sureties for good behaviour, is part of the penalty “inflicted upon such as have been guilty of certain gross misdemeanors.” . And this he says, is preventive justice; an honor to the English law, and upon every principle of reason, of humanity, and of sound policy, preferable in all respects to “punishing justice.”
Upon these authorities we have no doubt, but that, at the common law, a court of record has a discretion to require sureties for good behaviour from a party, who shall have been found guilty of a gross misdemeanor, and that there is no change of the law in this respect in this,State. If, as Blackstone says, it is an honor to the English law, “on grounds of reason, humanity and public policy,” that such a power should exist in England, surely there is no ground, why these humane and conservative principles should not exist in our law.
In this respect, therefore, the common law, is the law of this State. But this power, although discretionary, must be exercised with a sound legal discretion by the circuit court. The misdemeanor must, according to Blackstone, be of a grass character, where this judgment is given. It does not follow, that because a party has been guilty of a misdemeanor, that he may be required to find sureties for good behaviour. The character of offence of which he may be guilty, must contain in itself that turpitude that would justify the appellation “gross” to the offence; or the evi *499 dence must disclose circumstances connected with it, aggravate ing it to that character.
Thus, the offence of keeping a bawdy-hóuse, is in its nature á gross misdemeanor; so also of a gaming-house, or disorderly-house. But the selling a single half pint of whiskey, unaccompanied with any other fact, although against law, and a misdemeanor, would not be a gross misdemeanor. But if it were to appear in evidence, that the party selling, was surrounded with drunken, noisy, obscene men, to the great annoyance of the public, this state of things, produced by his practice, and in part by the very whiskey he might be convicted of selling, would constitute such violation of the law, a gross misdemeanor. So, a libel might, or might not, be a gross offence, according as the circumstances of the publication, and its character, might mitigate or aggravate it. So,, a game of cards might be played against law, but under circumstances, that would not justify, in this legal view of the subject, the denomination of a gross misdemeanor. But if it be played in connection with common gamblers, associated at a gaming-house, or as is some times the case, by the road-side on Sunday with negroes, it would be a gi'oss " misdemeanor.
These illustrations are only intended to indicate the general character of offence to which, we think, this power of requiring sureties, for the good behaviour, pertains.
According to this view of the subject, we do not think the case before us is such an one as to justify the requisition of sureties for thé good behaviour.
The defendant, from the proof, appears to be a boy of industrious habits, laboring daily for a subsistence, and there are no circumstances connected with the game at which he played, that author-ises us to say it is a gross misdemeanor, unless we were to say, that all gaming falls within this appellation, which we are not prepared to do. .But the bond which the defendant was required to give in this case, is not authorised, either by the British statute, or our act of assembly, or by the common law. He was required to find sureties, that he would not game for twelve months. Such special bond is no where authorised that we have been enabled to discover. If the case had been a proper one for such judgment, a recognizance, with securities for good behaviour generally, would have been the proper form of the undertaking.
We, therefore, reverse the judgment, and proceeding to render *500 such judgment as the circuit court shouldhave given, it is adjudged, that the defendant pay a fine of five dollars, and remain in custody, until the said fine, and the costs of the circuit court shall he paid.